

# In the Missouri Court of Appeals
## Eastern District

### DIVISION TWO

|  |  |  |
|---|---|---|
| In the interest of: | ) | No. ED100739 |
| S.Y.B.G., | ) | |
|  | ) | Appeal from the St. Louis County |
|  | ) | Circuit Court |
| Minor. | ) | |
|  | ) | Honorable Ellen L. Siwak |
|  | ) | |
|  | ) | Filed: September 23, 2014 |
|  | ) | |

### Introduction

L.G. (Mother) appeals the trial court's judgment terminating her parental rights to her daughter, S.Y.B.G. (Child). Mother claims there was insufficient evidence supporting the grounds for termination and the court's finding that termination was in the child's best interest. We affirm.

### Factual Background

L.G. is the natural mother of S.Y.B.G., born on July 11, 2007. At the time, Mother was in a relationship with the biological father, who is now deceased.[1] In September 2011, police responded to a 911 call from Mother stating that she was in distress and hallucinating from using methamphetamine and marijuana. When officers arrived, they found Mother unable to function.

---

[1] The record indicates that the biological father passed away in July 2012.

Child was home alone with Mother at the time. On December 13, 2011, the Children's Services Division of St. Louis County (Division) filed a petition alleging that Mother had failed to provide care and custody for the minor child. The Division took protective custody of Child on December 23, 2011, and she was placed in foster care. On January 24, 2012, the child was adjudicated abused or neglected. On January 27, 2012, Mother entered into a written service plan agreement with the Division, whereby she agreed to obtain psychological and drug/alcohol evaluations, as well as attend and participate in counseling, recommended programs and classes, and submit to drug screens upon request. Mother was also required to attend weekly visits with Child and obtain suitable housing and employment. On February 1, 2013, the juvenile officer filed a petition to terminate Mother's parental rights pursuant to § 211.447.5(2)[2] ("abuse and neglect) and § 211.447.5(3) ("failure to rectify").

On June 28, 2013, the trial court conducted a hearing on the petition. On September 28, 2013, the court entered its judgment terminating Mother's parental rights, finding that the Child had been under the court's jurisdiction for a period of at least one year, that Mother suffers from a chemical dependency that prevents her from consistently providing the necessary care, custody and control over Child, and which is not likely to be remedied in the near future, and that the continuation of the parent-child relationship greatly diminishes Child's prospects for early integration into a stable and permanent home. The court further found that termination of Mother's parental rights was in Child's best interest. Mother appeals.

**Standard of Review**

We will affirm the trial court's judgment terminating a party's parental rights unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *In re C.J.G.*, 75 S.W.3d 794, 797 (Mo. App. W.D. 2002). The

_____
[2] All statutory references are to the Missouri Revised Statutes (Supp. 2012), unless otherwise indicated.

2

judgment will be reversed only if we are left with a firm belief that the judgment is wrong. *Id.* The evidence is viewed in the light most favorable to the trial court's judgment and we defer to the court's determination regarding credibility of witnesses. *In re J.M.S.*, 83 S.W.3d 76, 82 (Mo. App. W.D. 2002). The party seeking termination bears the burden of proof in a termination of parental rights proceeding. *Id.*

The termination of a party's parental rights requires a two-step analysis. First, the trial court must find by "clear, cogent, and convincing evidence" that one or more grounds for termination of parental rights exists. *In re G.G.B.*, 394 S.W.3d 457, 472 (Mo. App. E.D. 2013). "Clear, cogent, and convincing evidence" is evidence that instantly tilts the scales in favor of termination when weighed against the evidence in opposition and the trier of fact is left with an abiding conviction that the evidence is true. *In re E.F.B.D.*, 245 S.W.3d 316, 319 (Mo. App. S.D. 2008). This standard may be satisfied even when evidence contrary to the trial court's finding is presented or the evidence might support a different conclusion. *Id.*

If the trial court finds that at least one of the statutory grounds for termination exists, the court must then determine whether, by a preponderance of the evidence, the termination of parental rights is in the child's best interest. *In re K.A.C.*, 246 S.W.3d 537, 543 (Mo. App. S.D. 2008). The "best interest" determination is a subjective assessment based on the totality of the circumstances. *In re G.G.B.,* 394 S.W.3d at 472. We review the trial court's best interest determination for an abuse of discretion. *In re P.L.O.*, 131 S.W.3d 782, 789 (Mo. banc 2004). An abuse of discretion occurs only when the trial court's ruling is "clearly against the logic of the circumstances and so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration." *In re S.R. J., Jr.*, 250 S.W.3d 402, 406 (Mo. App. E.D. 2008).

## Discussion

### *Grounds for Termination of Parental Rights*

In her first and second points, Mother challenges the sufficiency of evidence to support the grounds for termination pursuant to § 211.447.5(2) ("abuse and neglect") and § 211.447.5(3) ("failure to rectify").

As an initial matter, we note that under Point I of her brief, Mother misconstrues the basis for the termination of her parental rights, in that, she challenges the sufficiency of the evidence to support termination pursuant to § 211.447.5(2) ("abuse and neglect"). Although the court makes reference to both § 211.447.5(2) and § 211.447.5(3), as alleged in the petition, it is apparent that the court's findings (and subheadings) track the basis for termination set out in § 211.447.5(3), not § 211.447.5(2).[3] Indeed, it is evident from the judgment that the court's findings were specifically tailored to address the factors in subsections (a) through (d) of § 211.447.5(3). As such, we address only Mother's challenge to the grounds for termination based on § 211.447.5(3), as set forth in Point II. Point I is denied.

### *Section 211.447.5(3) - Failure to Rectify*

In her second point, Mother claims the trial court erred in terminating her parental rights under § 211.447.5(3) because there was insufficient evidence to support the court's findings.

For parental rights to be terminated based on § 211.447.5(3), the child must have been under the juvenile court's jurisdiction for a period of one year, and it must be determined that:

> [T]he conditions which led to the assumption of jurisdiction still persist, or conditions of a potentially harmful nature continue to exist; and that there is little likelihood that those conditions will be remedied at an early date so that the child can be returned to the parent in the near future, or the continuation of the parent-

---

[3] Even assuming *arguendo*, that the basis for termination of Mother's parental rights included both § 211.447.5(2) and § 211.447.5(3), as alleged in the petition, proof of just one of these grounds is sufficient to support the termination. *See In re N.M.J.*, 24 S.W.3d 771, 777 (Mo. App. W.D. 2000).

4

child relationship greatly diminishes the child's prospects for early integration into a stable and permanent home.

Section 211.447.5(3).

In determining whether to terminate parental rights under § 211.447.5(3), the court must consider and make findings on the following four factors:

a) The terms of a social service plan entered into by the parent and the division and the extent to which the parties have made progress in complying with those terms;

b) The success or failure of the efforts of the juvenile officer, the division or other agency to aid the parent on a continuing basis in adjusting his circumstances or conduct to provide a proper home for the child;

c) A mental condition which is shown by competent evidence either to be permanent or such that there is no reasonable likelihood that the condition can be reversed and which renders the parent unable to knowingly provide the child the necessary care, custody and control;

d) Chemical dependency which prevents the parent from consistently providing the necessary care, custody and control over the child and which cannot be treated so as to enable the parent to consistently provide such care, custody and control[.]

The four factors are not separate grounds for termination by themselves, but rather categories of evidence, that the court may consider along with all other relevant evidence in determining whether grounds for termination exist under § 211.447.5(3). *In re G.G.B.*, 394 S.W.3d at 468. Any one of the factors is a condition or act that may have a negative impact on a child, and if found to exist, should be considered in determining whether grounds for termination exist. *Id.* Although the court is required to consider and make findings as to all four factors, the proof of just one is sufficient for termination. *In re N.M.J.*, 24 S.W.3d at 778.

"A parent's conduct after the filing of the termination petition cannot constitute the sole consideration of the trial court's decision." *In re T.E.*, 35 S.W.3d 497, 504 (Mo. App. E.D. 2001). "The court must look to the totality of the parent's conduct, both prior to and after the filing of the petition[.]" *In re J.W.*, 11 S.W.3d 699, 706 (Mo. App. W.D. 1999) (quotations and

5

citations omitted). "All grounds for termination must to some extent look to past conduct because the past provides vital clues to present and future conduct." *In Interest of T.T.*, 954 S.W.2d 429, 432 (Mo. App. W.D. 1997). "Otherwise, a parent may argue that he has reformed since the filing of the petition; reformation having occurred while the child was away." *Id.*

*(a) Social Service Plan Compliance*

With respect to the first factor, Mother's compliance with the terms of the social service plan, the court found that Mother had entered into a written service plan agreement on January 27, 2012. The service plan required Mother to obtain a mental health evaluation and parenting assessment, obtain a drug/alcohol evaluation, submit to drug screens as requested, attend scheduled visits with Child, write letters and/or cards to Child, obtain suitable housing and maintain employment, or otherwise provide sufficient income to support herself and Child. The service plan further required Mother to cooperate with and utilize the services offered by the Division, comply with all court orders, and attend and participate in recommended programs and classes. The court found that Mother understood the service plan's requirements and that violating terms of the plan could result in the termination of her parental rights.

With regard to scheduled visits, the court found that Mother had weekly visits with Child beginning in February 2012 through January 2013. Mother missed seven of these visits, due either to cancellation, failing to confirm, forgetting about the visit, or due to Mother's hospitalization. After Mother relapsed in January 2013, these visits were modified to every other week. Thereafter, Mother had only five visits with Child. Mother also cancelled a scheduled visit with Child in June 2013. Thereafter, Mother did not contact the Division to schedule any additional visits prior to the termination hearing. The court also found that while at times

Mother had fairly consistent telephone contact with Child, the child would go weeks without any telephone contact.

The court further found that Mother failed to provide any financial support for Child while the child was in foster care. Mother did provide small gifts for holidays and the Child's birthday, as well as a birthday cake, Easter basket, candy, stickers, and meals from McDonalds. Mother reported to the Division that she was employed part-time as a bookkeeper in February 2012, but failed to provide verification. Mother also said that she worked for an accountant approximately 9 hours per week, making $12 per hour, preparing meals and assisting with files, but provided no documents or pay stubs to verify this employment.

With regard to addressing her chemical dependency, the court found that Mother failed to successfully complete substance abuse treatment. In July 2012, Mother was unsuccessfully discharged from the "Bridgeway" outpatient treatment program, after completing inpatient treatment. After beginning treatment through the court-sponsored "SAFETI" program, Mother tested positive for marijuana in August 2012. At the time, Mother refused to admit that she had used marijuana. In September 2012, Mother was unsuccessfully discharged from the SAFETI program. After being discharged from the SAFETI program, the Division required Mother to submit drug screens upon request. Mother began attending the "BASIC" drug treatment program until December 2012, at which point she stopped going to treatment. On January 15, 2013, Mother tested positive for methamphetamines. Mother initially denied using the drug, but later admitted ingesting a capsule of methamphetamines that she found while cleaning her basement. After re-engaging in the BASIC treatment program in January 2013, Mother relapsed in February 2013, and stopped going to treatment and was discharged from the program.

7

In April 2013, two months after the filing of the petition to terminate her parental rights, Mother entered substance abuse treatment through Preferred Family Healthcare (PFH). Mother indicated that she attended several NA/AA meetings in March and April 2013, the bulk of which occurred during inpatient treatment. After transferring to outpatient treatment in May 2013, Mother indicated that she attended five NA/AA meetings. However, Mother stopped attending NA/AA meetings because she was not comfortable and felt that she was "not like the others" in attendance. The court found that Mother had a poor attitude about attending classes and prior to complete cessation, failed to go for weeks at a time.

With respect to court-ordered drug screens, the court found that in addition to testing positive for marijuana in August 2012, Mother completed four drug screens in September through November 2012, three of which were diluted. From November 27, 2012 through January 9, 2013, Mother missed four drug screens. On January 15, 2013, Mother tested positive for amphetamines, despite the sample being diluted.

The court further found that Mother submitted drug screens while receiving treatment through PFH. According to letters from PFH, Mother tested negative for three drug screens. However, copies of those test results were not provided to the court, nor was there any indication of the protocol or methods used for the drug-testing, or whether the samples were diluted. Moreover, the dates of these drug screens coincided with Mother's outpatient sessions and, as a result, the court found that these drug test results were not "random." On June 18, 2013 (ten days before the termination hearing), Mother failed to comply with the Division's request for a drug screen.

In summary, the court found that Mother had failed to acknowledge her drug problems and made excuses for failing to attend and/or complete drug treatment programs. The court

8

further found that Mother's chemical dependency/abuse treatment had been, and continued to be, inconsistent and there was no likelihood that Mother's chemical dependency would be suitably addressed in the reasonably foreseeable future so as to enable reunification of Mother and Child.

## (b) Agency Efforts

With respect to the Division's efforts to assist Mother, the court found that despite the Division's reasonable efforts to fulfill their responsibilities under the service plan, including offering services on multiple occasions to address Mother's chemical dependency and substance abuse issues, Mother had failed repeatedly to adjust her circumstances and conduct with respect to her chemical usage in order to provide a proper home for the child. The court also found that although the Division had initially made attempts to work with Mother informally, Mother did not enter inpatient treatment until after Child was taken into protective custody. The court further found that the Division's efforts to assist Mother have been hindered by her refusal to recognize the significance of her chemical usage "by concocting excuses of why she could not attend and or complete programs and/or treatment." Finally, the court found that to the minimal extent that Mother complied with the service plan, her efforts and those of the Division proved unsuccessful in providing a continuing relationship between Mother and Child and in reunifying them.

## (c) Mental Condition

With regard to this factor, the court found there was no evidence that Mother suffered from a mental condition that could not be reversed or that rendered her unable to knowingly provide Child with the necessary care, custody, and control. The court also noted that although Mother had been hospitalized in May 2012 due to mental health issues, it appeared that these issues were being treated adequately with psychiatric services.

9

*(d) Chemical Dependency*

With respect to Mother's chemical dependency issues, the court made numerous findings which, in large measure, track and augment the findings previously noted under subsection (a) regarding compliance with the service plan agreement. To restate all of the court's considerable findings with regard to this factor would be unnecessarily repetitive.

We note, however, that the court specifically found there was substantial evidence that Mother suffers from a chemical dependency that cannot be successfully treated and that prevents her from consistently providing the necessary care, custody and control over Child. The court further found that Mother's inconsistent chemical abuse/dependency treatment is, in part, controlled by her lack of acknowledgment of her substance abuse and dependency problems as well as her lack of commitment to addressing and treating these issues.

Mother does not dispute that Child has been under the court's jurisdiction for over a year or that she has chemical dependency issues that have prevented her from being able to provide the necessary care, custody, and control of Child. Instead, Mother takes issue with the court's finding that she complied with the service plan to a "minimal extent," claiming this finding is not supported by clear, cogent and convincing evidence. Specifically, Mother complains that the court "ignored or minimized" the provisions of the service plan that she completed, *i.e.*, attending visits with Child, providing small gifts and meals, obtaining psychological and substance abuse evaluations, as well as psychiatric treatment and counseling. Mother claims the court should have considered the progress and "significant strides" she has made towards completing the service plan requirements,[4] pointing out that at the time of the hearing, she had re-engaged in substance abuse treatment on an outpatient basis.

---

[4] In support, Mother relies on *In the Interest of S.J.H.*, 124 S.W.3d 63 (Mo. App. W.D. 2004). In that case, the appellate court reversed a judgment, in concluding that the trial court's findings were against the weight of the

Contrary to Mother's assertions, the court's findings are supported by the evidence presented at the termination hearing. At the hearing, Michael Aitch, a case manager with the Division, who was initially assigned to work with Mother beginning in September 2011 until February 1, 2012, testified that he met with Mother after the police were contacted due to her using methamphetamines and marijuana. Aitch testified that while Mother admitted to previously using marijuana, she denied continued use of the drug. Aitch said that he arranged visits for Mother and Child, provided referrals for treatment and arranged drug screens for Mother. Aitch also said that he explained the service plan agreement to Mother and her obligations under the plan, and informed her that non-compliance with the plan's requirements could result in Child being removed from her custody. Despite the efforts of the Division to assist Mother by offering services and treatment, Aitch believed that Mother still had chemical dependency issues that would prevent her from providing adequate care, custody and control of the child, which he based, in part, on Mother's inconsistency in successfully completing drug treatment programs. Aitch did not believe that Mother's recent progress indicated that she would be able to resume custody of Child within a reasonable time in the near future. Aitch also testified that in his opinion, the termination of Mother's parental rights was in Child's best interest.

Lori Epley, a children's services worker and supervisor with the Division, who worked with Mother from February 2012 through February 2013 also testified. Epley said that her duties included providing services for parents to assist them in resolving their issues in order that they might be reunified with their children. Epley indicated that weekly visits were arranged between Mother and Child, until Mother relapsed in January 2013, at which point visits were

evidence as to parental compliance with the service plan, and the evidence was insufficient to establish grounds for termination. *Id*. at 70. In contrast, in this case, the trial court's findings with regard to compliance with the service agreement are amply supported by the evidence, and are not against the weight of the evidence.

modified to every other week. Epley said that Mother had cancelled and/or missed several scheduled visits with Child. She also indicated that although arrangements were made for weekly phone contact between Mother and Child, at times the child would go weeks without phone contact from Mother. Aside from small gifts and meals, Epley said that Mother did not contribute any financial support for Child after being taken into protective custody. Epley indicated that Child was adjusting well in her foster home.

Epley also completed a social study and investigative report which was admitted into evidence. The report included information regarding Mother's visits with Child, compliance with the service plan, evaluations and assessments, drug treatment, drug screens, and recommendations. The report also reflected that the foster parent had expressed interest in adopting Child. With respect to Mother's substance abuse treatment, Epley said that Mother tested positive for marijuana in August 2012 and was unsuccessfully discharged from treatment in September 2012. Epley also testified that Mother stopped attending substance abuse treatment in December 2012 and was unsuccessfully discharged from drug treatment in February 2013. Epley also confirmed that Mother had missed drug screens and also diluted some of them.

Epley testified that Mother has a chemical dependency issue which prevents her from providing adequate care, custody, and control for the Child. Epley further testified that in her opinion, she did not think that Mother's chemical dependency issues would be rectified in the near future, nor did she believe there was any likelihood that Mother's chemical dependency condition could be remedied at an early date so the Child could be returned to Mother in the near future.

Testifying on her own behalf, Mother admitted testing positive for methamphetamines in January 2013, five months before the termination hearing. Mother said that she had not used

marijuana since 2011, but admitted testing positive for the drug in August 2012. Mother said that she was trying to "stay clean" and was reengaged in substance abuse treatment. Mother also said that she needed more time in order to continue with her substance abuse treatment. Mother believed that she would need at least "365 days" of continued treatment to address her substance abuse issues. Mother acknowledged that she was not ready to resume custody of Child.

"Partial compliance with a service plan does not prevent a court from finding grounds for termination as a result of a failure to rectify conduct or conditions." *In re B.L.H.*, 158 S.W.3d 269, 279 (Mo. App. E.D. 2005). Moreover, evidence of short-term improvements in a parent's circumstances which occur after the filing of the termination petition is not necessarily compelling. *In re N.M.J.*, 24 S.W.3d 771, 780 (Mo. App. W.D. 2000). A parent's conduct after the filing of the termination petition cannot constitute the sole consideration of the trial court's decision. *Id*.

Much of the progress that Mother claims the court "minimized" with respect to her substance abuse treatment occurred after the termination petition was filed. Moreover, in relying solely on testimony and evidence in her favor, Mother misunderstands our standard of review. We view the evidence in the light most favorable to the trial court's decision and may ignore evidence to the contrary. *See In re B.J.K.*, 197 S.W.3d 237, 247 (Mo. App. W.D. 2006). We also defer to the trial court's assessment of witness credibility. *In re C.A.M.*, 282 S.W.3d 398, 409 (Mo. App. S.D. 2009). We will not disregard the trial court's judgment merely because there was some evidence favorable to Mother.

The record shows that Mother was unsuccessfully discharged from substance abuse treatment programs at least three times between 2012 and 2013 while Child was in foster care.

After entering substance abuse treatment, Mother tested positive for marijuana and methamphetamines and missed or diluted several required drug screens. The reasons for being discharged from drug treatment included noncompliance, attendance issues, and positive drug screens. Mother's noncompliance was also evident when she failed to submit a drug screen requested by the Division just ten days before the termination hearing. By Mother's own admission, she was not ready to resume custody of the child and would need at least an additional year of continued substance abuse treatment to address her chemical dependency issues.

Based on the record presented, there was substantial evidence from which the court could conclude that Mother has chemical dependency issues that could not be successfully treated so as to enable her to consistently provide adequate care, custody and control over Child within an ascertainable period of time in the near future. The record also supports the court's finding that Mother has only been able to adjust her conduct for negligible periods of time. By repeatedly failing to successfully complete drug treatment programs, Mother has demonstrated inconsistency as well as a lack of commitment in addressing her chemical dependency issues. There was substantial evidence that Mother's chemical dependency issues could not be adequately remedied in the near future so as to enable reunification with Child. The court's findings were supported by clear, cogent, and convincing evidence. Hence, the court did not err in finding that grounds for termination of Mother's parental rights existed pursuant to § 211.447.5(3). Point II is denied.

### *Best Interest Determination*

For her third point, Mother claims there was insufficient evidence to support the trial court's findings under § 211.447.7, in determining that termination of her parental rights was in Child's best interest.

The "best interests" determination is a subjective assessment based on the totality of the circumstances. *In re A.A.T.N.*, 181 S.W.3d 161, 167 (Mo. App. E.D. 2005). Section 211.447.7 contains no mandatory language directing the court to make specific findings with respect to each of its subparagraphs, *In re G.G.B.*, 394 S.W.3d at 472, except where appropriate and applicable. *In re N.M.J.*, 24 S.W.3d at 783. Findings under this section are discretionary and our review is only for an abuse of discretion. *Id*. Section 211.447.7 directs the court to evaluate the following seven factors when considering whether termination of parental rights is in the child's best interest:

1) Emotional ties to the birth parent;
2) The extent to which the parent has maintained regular visitation or other contact with the child;
3) The extent of payment by the parent for the cost of care and maintenance of the child when financially able to do so including the time that the child is in the custody of the division or other child-placing agency;
4) Whether additional services would be likely to bring about lasting parental adjustment enabling a return of the child to the parent within an ascertainable period of time;
5) The parent's disinterest in or lack of commitment to the child;
6) The conviction of the parent of a felony offense that the court finds is of such a nature that the child will be deprived of a stable home for a period of years; provided, however, that incarceration in and of itself shall not be grounds for termination of parental rights;
7) Deliberate acts of the parent or acts of another of which the parent knew or should have known that subjects the child to a substantial risk of physical or mental harm.

Based on the evidence presented at the termination hearing, the trial court found that (1) Child had emotional ties to Mother and was bonded to her; (2) Mother had maintained fairly

15

regular visitation or contact with Child, although her excuses for missed visits and telephone contact were "incomprehensible;" (3) Mother, although financially able, failed to contribute to the cost of care and maintenance of the child and has provided no financial support for Child since the child was placed into protective custody in December 2011; (4) it is unlikely that additional services would bring about lasting parental adjustment enabling a return of Child to Mother within an ascertainable period of time; (5) although visits with Child were appropriate and Mother demonstrated an interest in Child, Mother "clearly demonstrated a disinterest and/or lack of commitment to the child by either providing mostly inane excuses for not being available for visits or telephone contact, or not providing any excuse at all." Mother's lack of commitment in addressing her substance abuse and chemical dependency is also demonstrative of her disinterest and /or lack of commitment to Child; (6) Mother has no felony convictions; and (7) Mother has not subjected Child to deliberate acts of abuse by herself, or another. Based on the evidence presented, the court found that termination of Mother's parental rights was in Child's best interest.

Mother disputes several of the court's findings in this regard, arguing that the court's ruling was against the logic of the circumstances and an abuse of discretion. Specifically, Mother claims the court erred in finding that (1) she made excuses for missing visits with Child because she had "legitimate and understandable" reasons for the missed visits; (2) that Mother provided no financial support for Child because she provided small gifts and meals for Child, and Mother did not know she was supposed to contribute financially while Child was in foster care, and she purchased a house; (3) that additional services would not likely bring about lasting parental adjustment enabling return of Child to Mother within an ascertainable period of time; and (4) that Mother demonstrated a disinterest and/or lack of commitment to child because she

had regular visits with child and participated in drug treatment programs. Mother also asserts that because the court found that Child had emotional ties and was bonded with her, the termination of her parental rights was not in Child's best interest.

Contrary to Mother's assertions, the evidence presented at the hearing supports the trial court's determination that termination is in Child's best interest. In addition to the evidence already discussed, there was also evidence that Mother failed to provide for the cost of care and maintenance of Child while in foster care. Mother made no financial contributions to Child other than small gifts and meals during scheduled visits. Although Mother indicated that she was employed part-time, she failed to provide any verification of her employment to the Division.

The record indicates that the Division has offered Mother numerous opportunities, referrals, and services to rectify her situation. Despite the efforts by the Division to aid Mother, the case workers did not believe that Mother would be able to adjust her circumstances so that she could provide a proper home for Child, nor did they believe that Mother's substance abuse issues could be remedied in the near future to enable reunification with Child. The court was not required to make negative findings based on all seven factors under § 211.447.7. *In re C.A.M.*, 282 S.W.3d at 409. Likewise, there is no minimum number of negative factors necessary for termination. *Id*. The record supports the court's finding that Mother continues to have chemical dependency issues that prevent her from providing proper care and custody of Child. There was also substantial evidence to support the court's finding that additional services would not likely bring about lasting parental adjustment to enable the return of Child within an ascertainable period of time. Accordingly, the trial court did not abuse its discretion in determining that termination of Mother's parental rights was in Child's best interest. Point III is denied.

17

## Conclusion

For the foregoing reasons, the trial court's judgment is affirmed.

_____
Philip M. Hess, Judge

Sherri B. Sullivan, P.J. and
Mary K. Hoff, J. concur.