

# In the Missouri Court of Appeals
## Eastern District

### DIVISION TWO

| | |
|---|---|
| IN THE INTEREST OF: N.R.P. AND J.A.P. | ) No. ED103643 |
| | ) |
| | ) Appeal from the Circuit Court of |
| | ) the City of St. Louis |
| | ) |
| | ) Honorable David C. Mason |
| | ) |
| | ) Filed: June 21, 2016 |
| | ) |

### Introduction

T.P. (Father) appeals the judgment of the Circuit Court of the City of St. Louis terminating his parental rights to N.R.P. and J.A.P (collectively the Children). On appeal, Father argues that the trial court erred by terminating Father's parental rights because its findings were conclusory, not supported by clear, cogent, and convincing evidence, and against the weight of the evidence. Finding no error, we affirm.

### Factual Background

Father is the biological parent of N.R.P. and J.A.P. N.R.P. was born in May 2011. N.R.P.'s mother (Mother) took him to the hospital in March 2012. While at the hospital, Mother's behavior became erratic and the hospital staff did not release N.R.P. to Mother because they were concerned about Mother's mental health. As a result, N.R.P. was taken into the care

of the Missouri Children's Division (the Division). N.R.P's younger brother, J.A.P., was born on May 7, 2012. He came into the care of the Division ten days after he was born.

Around the time N.R.P. was removed from Mother's care, a juvenile officer working for the Division requested permission from Father to inspect his home and asked him to provide documentation of employment or financial stability. Father did not comply with any of the officer's requests. As a result, the circuit court assumed authority over N.R.P. on May 1, 2012 and J.A.P. on June 19, 2012. Both children have remained continuously in the care of the Division since they were removed from Mother.

After the circuit court assumed authority over N.R.P. and J.A.P., it ordered Father to comply with a service plan that required Father to:

1. submit to paternity testing;

2. have weekly, supervised visitation with the children;

3. obtain and maintain financial stability or regular employment;

4. obtain and maintain appropriate housing with working utilities for himself and his children;

5. submit to blood, breath, and urine testing upon request;

6. enroll in and successfully complete an approved substance abuse assessment with aftercare and provide proof of participation and completion;

7. enroll in and successfully complete parenting skills training;

8. enroll in and successfully complete family violence counseling;

9. inform the Division of the identity of relatives who may be caretakers of his children;

10. submit to a psychological evaluation with parenting assessment and comply with any recommended treatment;

11. execute releases of any records of counseling, evaluations, or examinations; and

12. comply with the rules of his probation.[1]

Father did not complete multiple terms of the service plan, and the Division filed a petition to terminate Father's parental rights. In September 2015, the case proceeded to trial to determine whether Father and Mother's[2] parental rights to the Children should be terminated. Father did not appear at the trial. Father's counsel told the trial court that she did not know why he was not present. She stated she informed Father of the trial's date and time and attempted to call Father the morning of trial, but could not reach him. Father's counsel requested a continuance to locate Father, which the trial court denied.

The following facts were adduced at trial. The Division asked Father to submit to forty-one drug tests during the time the Children were in foster care. Of those forty-one requests, Father complied four times. In all four tests, Father tested positive for marijuana, and he tested positive for cocaine on at least one occasion. Father also submitted to two random drug tests in August 2015, twenty days apart, while he was being treated for substance abuse at Bridgeway. He tested positive for marijuana and cocaine both times. As a result of his drug tests results, Bridgeway discharged him. Father began outpatient treatment at Bridgeway shortly after his discharge. At the time of trial, Father had not completed a substance abuse program.

Father completed a nurturing skills and parenting program in August 2012. Father completed twenty out of the thirty-two scheduled Family Support Team meetings.

---

[1] Father was on probation for felony distribution of illegal drugs.
[2] Mother voluntarily consented to the termination of her parental rights shortly after the trial.

During the pendency of the case, Father repeatedly failed to comply with the Division's requests to provide his home address.[3] However, in March or April 2015, Father provided the Division with an address. The Division inspected the home and found that it was clean and had three bedrooms. However, following the initial inspection, Father stopped cooperating with the Division and repeatedly cancelled scheduled home visits.

Father also did not comply with the Division's requests to provide proof of employment. The only proof of employment he provided was an undated letter that he gave to his case manager in February or March of 2013 from a person claiming to be his employer. Father's case manager called the person who wrote the letter. The person stated that he would try to give the case manager something more official, but he never did. Father's case manager tried calling again in May 2015, but the phone number was no longer in service. Father never provided paycheck stubs, tax forms, or any other proof of employment.

The Children bonded with Father and knew him as their father. Father was entitled to weekly visitations with the Children, which he consistently attended. Father also attended several doctor's appointments with J.A.P. The Children enjoyed Father's visits and he brought snacks and gifts with him to the visitations. However, aside from giving the Division money to buy diapers on one occasion, Father did not provide any financial support for the Children.

Mother testified at trial that Father had been violent with her in the past. Father participated in a family violence counseling program in June 2013, but he was unsuccessfully discharged from counseling in September 2013 for not cooperating and making inappropriate comments. Father attempted to obtain family violence counseling with Provident in August 2015, but was unable to because the Division had not yet paid the $80 assessment fee.

---

[3] One case manager testified that she asked Father for his address once a month.

4

Following the trial, the trial court kept the record open for one week to allow Father to submit a post-hearing affidavit or exhibit to demonstrate employment. Father failed to do so. The trial court terminated Father's parental rights to the Children pursuant to § 211.447.5(3)[4] and transferred the custody of the Children to the Division for the purpose of adoption or foster care placement. This appeal follows.

**Standard of Review**

We review a judgment terminating parental rights under the standard set forth in *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). *See In re B.H.,* 348 S.W.3d 770, 773 (Mo. banc 2011). Therefore, we will affirm a trial court's judgment terminating parental rights unless the judgment is not supported by substantial evidence, is against the weight of the evidence, or it erroneously declares or applies the law. *In re G.G.B.,* 394 S.W.3d 457, 467 (Mo. App. E.D. 2013). When reviewing whether a ground for termination is against the weight of the evidence, we defer to the trial court's findings of fact and consider all the evidence and reasonable inferences from the evidence in the light most favorable to the judgment. *In re P.L.O.*, 131 S.W.3d 782, 788–89 (Mo. banc 2004).

Terminating parental rights requires a two-step process. First, the trial court must find by "clear, cogent, and convincing evidence" that one or more grounds for termination exists. *In re S.Y.B.G.,* 443 S.W.3d 56, 59 (Mo. App. E.D. 2014). Clear, cogent, and convincing evidence is evidence that "tilts the scales in favor of termination when weighed against the evidence in opposition" and "leaves the trier of fact with an abiding conviction that the evidence is true." *Id.* This standard may be met even when the evidence before the trial court might support a different conclusion. *Id.* If the trial court finds that one or more grounds for termination exists, the court proceeds to the second step and determines, by a preponderance of the evidence, whether

---

[4] All statutory citations are to RSMo 2015, unless otherwise indicated.

termination of parental rights is in the best interest of the child. *In re E.F.B.D.*, 245 S.W.3d 316, 319 (Mo. App. S.D. 2008).[5]

## Discussion

In a single point on appeal, Father argues that the trial court's judgment terminating his parental rights pursuant to § 211.447.5(3) RSMo was error because it was not supported by clear, cogent, and convincing evidence. Father also argues that the court's findings were conclusory, and against the weight of the evidence.[6] The Division and the Children's guardian ad litem both filed separate briefs arguing that the trial court did not err by terminating Father's parental rights.

A portion of Father's brief focuses on alleged defects in the language and form of the judgment and the alleged failure of the trial court to make statutorily-required findings. However, Father failed to preserve these issues for appeal. As the Division pointed out in its brief, Missouri Supreme Court Rule 78.07(c) (2015) mandates that "[i]n all cases, allegations of error relating to the form or language of the judgment, including the failure to make statutorily required findings, must be raised in a motion to amend the judgment in order to be preserved for appellate review." Therefore, we will only review Father's remaining allegations that clear, cogent, and convincing evidence was not adduced on the record to support the trial court's judgment, and that the trial court's findings were against the weight of the evidence.

For a parent's rights to be terminated pursuant to § 211.447.5(3), the parent's child must have been under the court's jurisdiction for a period of one year, and the court must determine that:

---

[5] Father does not contest the trial court's findings regarding the best interests of the Children.

[6] We note that Father's point is multifarious, but we can discern each of Father's arguments and will exercise our discretion to review Father's point. *See Castor v. State*, 245 S.W.3d 909, 914 n.6 (Mo. App. E.D. 2008).

[T]he conditions which led to the assumption of jurisdiction still persist, or conditions of a potentially harmful nature continue to exist; and that there is little likelihood that those conditions will be remedied at an early date so that the child can be returned to the parent in the near future, or the continuation of the parent-child relationship greatly diminishes the child's prospects for early integration into a stable and permanent home.

Furthermore, § 211.447.5(3) mandates the court to consider and make findings on the following four factors:

a) The terms of a social service plan entered into by the parent and the division and the extent to which the parties have made progress in complying with those terms;

b) The success or failure of the efforts of the juvenile officer, the division or other agency to aid the parent on a continuing basis in adjusting his circumstances or conduct to provide a proper home for the child;

c) A mental condition which is shown by competent evidence either to be permanent or such that there is no reasonable likelihood that the condition can be reversed and which renders the parent unable to knowingly provide the child the necessary care, custody and control;

d) Chemical dependency which prevents the parent from consistently providing the necessary care, custody and control over the child and which cannot be treated so as to enable the parent to consistently provide such care, custody and control[.]

The four factors are not separate grounds for termination by themselves, but instead are categories of evidence that the court may consider along with all other relevant evidence in determining whether grounds for termination exist under § 211.447.5(3). *In re G.G.B.,* 394 S.W.3d at 468. Any one of the factors is a condition or act that may have a negative impact on a

child, and, if found to exist, should be considered in determining whether grounds for termination are present. *Id.* Although the court is required to consider and make findings on all four factors, proof of just one factor is sufficient for termination. *In re N.M.J.,* 24 S.W.3d 771, 778 (Mo. App. W.D. 2000).

Pursuant to § 211.447.5(3)(a), the trial court made findings regarding the extent to which Father made progress with complying with the terms of his service plan. The trial court found that Father failed to: (1) provide proof that he was employed or otherwise financially stable; (2) submit to breath and urine testing for the majority of the pendency of the case;[7] (3) reenroll in and successfully complete an approved substance abuse program; and (4) inform the Division of relatives who may be fit and willing to be the caretaker of the Children. The trial court found that Father complied with the court order pertaining to visitation of the Children, he completed a parenting skills training course and psychological evaluation, and he executed releases requested by the Division, the juvenile officer, and the guardian ad litem.

Pursuant to § 211.447.5(3)(b), the trial court found that the Division made reasonable efforts to assist Father in complying with the social service plan and provide payment for therapy and evaluations. The trial court determined that Father made little progress in complying with his court-ordered services and failed to provide a proper home and the items necessary for reunification with the Children. Pursuant to § 211.447.5(3)(c), the trial court found that Father did not suffer from a mental condition that prevented him from caring for the Children.

Pursuant to § 211.447.5(3)(d), the trial court found that Father had a chemical dependency which could not be treated and which prevented him from consistently providing the necessary care, custody, and control of the Children. The trial court also conducted a best

---

[7] The court also noted that Father had tested positive for cocaine and marijuana twice shortly before the trial.

interest analysis pursuant to § 211.447.7 and, after considering the seven statutory factors, found that it was in the best interests of the Children for Father's parent rights to be terminated.

We conclude that the record provides clear, cogent, and convincing evidence to support the trial court's termination of Father's parental rights. With regard to the trial court's findings pursuant to § 211.447.5(3)(a), there was substantial evidence that Father failed to comply with many of the terms of his service plan. As the trial court noted, Father refused to comply with the service plan's drug testing requirements for the majority of the pendency of the case, and on the few occasions he did comply, he tested positive for illegal drugs. He was kicked out of a drug treatment program shortly before trial after testing positive for marijuana and cocaine, and he failed to successfully complete a drug treatment program. Father did not comply with the service plan's requirement to demonstrate financial stability or regular employment. The family's case manager was unable to confirm father's employment and Father failed to provide proof, aside from one letter that could not be verified, of any meaningful or consistent employment. Furthermore, because Father failed to appear at trial to testify about his employment, the trial court gave Father an opportunity to provide proof of employment following the trial, and Father failed to do so.

Father, citing *In Re A.M.W.*, 448 S.W.3d 307 (Mo. App. E.D. 2014), argues that his failure to comply with the service plan was only a factor to consider when determining whether the grounds set forth in § 211.447.5(3) exist. Father asserts that his failure to comply does not, alone, constitute grounds for terminating his parental rights. However, as Father recognizes in his brief, while termination may not be based merely upon failure to comply with the service plan itself, termination may be based on "the extent the non-compliance demonstrates harm to the child." *In re A.M.W.*, 448 S.W.3d at 316.

9

In the present case, the trial court based the termination of Father's parental rights not only on his noncompliance with the service plan pursuant to § 211.447.5(3)(a), but also its findings pursuant subsections § 211.447.5(3)(b), and § 211.447.5(3)(d). Regarding § 211.447.5(3)(b), the trial court determined that the Division made reasonable efforts to fulfill its responsibility to Father, but that Father made little progress in complying with the requirements of the service plan necessary for reunification. With regard to § 211.447.5(3)(d), the trial court found that Father suffered from a chemical dependency which prevented him from caring for the Children. The trial court based its finding on Father's refusal to comply with the drug testing requirements, his failure to complete a drug treatment program, and the fact that he tested positive for illegal drugs shortly before the trial. Furthermore, the record also demonstrates that Father tested positive for illegal drugs on other occasions prior to the instances cited by the trial court in its judgment.

For the foregoing reasons, we conclude that the trial court's judgment was not against the weight of the evidence and was supported by clear, cogent, and convincing evidence. Father's point is denied.

## Conclusion

The trial court's judgment is affirmed.

_____
Philip M. Hess, Presiding Judge

Gary M. Gaertner, Jr., J. and
Angela T. Quigless, J. concur.

10