

# In the Missouri Court of Appeals
# Eastern District

## DIVISION FOUR

IN THE INTEREST OF: J.G.W.       )      No. ED110147

)

)      Appeal from the Circuit Court of

)      St. Louis County

)      18SL-JU00836

)

)      Honorable Ellen W. Dunne

)

)      Filed:  November 8, 2022

Kelly C. Broniec, P.J., Philip M. Hess, J., and James M. Dowd, J.

## Introduction

The Mother of J.G.W. appeals the trial court's November 2021 order placing J.G.W., who has been in foster care since 2018, with a foster family residing in Washington D.C.[1] The trial court's order, entered following a hearing, was based on its finding that the placement was in J.G.W.'s best interests.  Mother claims in this appeal that the placement is not in J.G.W.'s best interests because of its likely impact on J.G.W.'s future visitation with Mother and his siblings and because he has no family members in Washington D.C.  We affirm because the competent

---

[1] This is the first appellate case in Missouri construing the amendment to section 211.261.2(2) RSMo Cum. Supp. 2021, which now allows a parent to file an interlocutory appeal of an order modifying the placement of a child.

and substantial evidence on this record supports the trial court's finding that the modification of J.G.W.'s placement was in his best interests and the order was not an abuse of discretion.

## Background

In December 2018, J.G.W. was removed from his Mother's custody and came under the court's jurisdiction pursuant to section 211.030(1)[2] after one of his younger siblings drowned in a portable cooler and J.G.W. and his other siblings were found to be in need of care and treatment. Since then, the court has placed J.G.W. in several homes with relatives as well as with non-relative foster parents. In October 2019, the court changed J.G.W.'s permanency plan from reunification with Mother to guardianship, and in August 2021, from guardianship to termination of parental rights and adoption.

In October 2021, the Children's Division filed the motion at issue here requesting the court approve the placement of J.G.W. with foster parents residing in Washington D.C. J.G.W. previously lived with these foster parents when they resided in the St. Louis area and he had remained in contact with them. Mother opposed the placement because it would prevent her and J.G.W.'s siblings from exercising in-person visitation and because J.G.W. has no family members in the Washington D.C. area.

At the hearing, the court heard from Mother, the proposed foster parents, a Children's Division representative, J.G.W.'s guardian ad litem, and J.G.W.'s then-current foster parent. On November 11, 2021, the court issued its order granting the motion. In its order, the court summarized the factual basis supporting its finding that the requested placement was in J.G.W.'s best interest. That factual basis, discussed in additional detail below, included J.G.W.'s need for a more permanent placement, the dwindling likelihood of reunification with his Mother due in

---

[2] All statutory references are to Missouri Revised Statutes (2016) unless otherwise stated.

2

large part to Mother's disruptive and dysfunctional conduct, and the shared desire of both J.G.W. and the proposed foster parents that the placement be ordered. Finally, the court imposed the following conditions on its placement order:

1. To minimize disruption to J.G.W.'s education, J.G.W. shall finish the then-current semester before moving, and that the timing of the school transfer be made in consultation with both schools' administrations and with J.G.W.'s therapist;

2. Mother shall receive one in-person visit with J.G.W. prior to his move;

3. The Children's Division shall facilitate virtual visits between Mother and J.G.W. and between J.G.W.'s siblings and J.G.W. after his move to D.C.;

4. The proposed foster parents shall facilitate virtual and in-person visits as ordered; and

5. The Children's Division shall arrange for and cooperate with a case manager in Washington, D.C. concerning J.G.W.'s educational, therapeutic, and medical services.

This appeal follows.

## Standard of Review

A decision by the court in juvenile matters is subject to the same standard of review applicable to court-tried civil cases. *R.D. v. J.D.*, 842 S.W.2d 560, 561 (Mo. App. W.D. 1992). Such a decision will be affirmed unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We defer to the trial court's credibility determinations and we view conflicting evidence in the light most favorable to the decision. *R.D. v. J.D.*, 842 S.W.2d at 561. The trial court's judgment is presumed valid, and the burden is on the appellant to demonstrate that it is incorrect. *Interest of C.E.B.*, 565 S.W.3d 207, 211 (Mo. App. S.D. 2018).

3

In child custody and relocation cases, "[o]ur standard of review requires great deference to the trial court in determining a child's best interests." *Aubuchon v. Hale*, 453 S.W.3d 318, 322 (Mo. App. E.D. 2014). "The determination of what is in a child's best interest is an ultimate conclusion for the trial court based upon the totality of circumstances." *In re K.M.W.*, 342 S.W.3d 353, 359 (Mo. App. S.D. 2011). "A best interest determination involves the consideration of a myriad of factors, and no single factor is outcome-determinative." *In re M.F.*, 1 S.W.3d 524, 532 (Mo. App. W.D. 1999).

We will reverse only if the trial court abused its discretion in determining a child's best interests. *See In re S.Y.B.G.*, 443 S.W.3d 56, 59 (Mo. App. E.D. 2014). *See also In re P.L.O.*, 131 S.W.3d 782, 789 (Mo.banc 2004). "Judicial discretion is abused when a trial court's ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Waisblum v. Waisblum*, 968 S.W.2d 753, 755 (Mo. App. W.D. 1998).

After a child comes under the jurisdiction of the court pursuant to section 211.031(1), the court may place the child in a number of residential settings including in the custody of a relative or in a foster family home. Section 211.181. The court may modify its placement orders at any time, either on its own motion or on the motion of an interested party. Section 211.251. Prior to August 28, 2021, such modification orders were not appealable. But an amendment to section 211.261.2 now allows a parent to appeal placement modification orders on an interlocutory basis. And in such appeals, we find that because the child's best interest is the primary concern when changing or modifying the child's placement, the foregoing abuse of discretion standard applies to section 211.261.2 appeals.

4

## Discussion

The issue presented by Mother's sole point on appeal is whether there is competent and substantial evidence in the record supporting the trial court's best interests finding such that its decision was a proper exercise of its discretion. We find no abuse of discretion given the abundant evidence in the record supporting the court's decision.

Understandably, the best interest of the child analysis permeates child custody determinations in both family law litigation and juvenile court litigation. For instance, Chapter 211 begins at section 211.011 by declaring that when a child comes within the jurisdiction of the juvenile court, "[t]he child welfare policy of this state is what is in the best interests of the child." *See In Interest of R.L.P.*, 652 S.W.2d 185, 187 (Mo. App. E.D. 1983).

Likewise, the same best interests analysis dominates child custody questions in the dissolution of marriage setting pursuant to section 452.375.2 which sets forth eight factors the court shall consider in determining the best interests of the child. It is apparent from our review of its order that the court was guided by section 452.375.2's factors, and properly so in our judgment, to the extent those factors were applicable. *Rosito v. Rosito*, 268 S.W.3d 410, 416 (Mo. App. W.D. 2008) (The trial court need only address the best interest factors that are relevant to a particular child custody case.). And it is readily apparent here that the court engaged in a fulsome analysis of J.G.W.'s best interests.

1.     Mother's wishes regarding J.G.W.'s placement.

The court considered at length Mother's interests including her stated goals with respect to J.G.W.'s custody and her visitation with him and the court weighed those matters against the interests of J.G.W. in acquiring a more permanent placement. In this context, most of the evidence before the court ran counter to Mother's contentions. Throughout the nearly four years

5

since J.G.W. was removed from Mother's custody, Mother engaged in a pattern of harassing and disruptive behavior towards several interested parties including some of J.G.W.'s prior foster parents, representatives of the Children's Division, and J.G.W.'s guardian ad litem. This conduct not only supports the court's placement order here but has made reunification with Mother increasingly less likely. The court was also aware of the Children's Division report showing concerns for Mother's untreated mental health diagnoses, her non-compliance with court-ordered services, and her inappropriate and disruptive conduct during supervised visits with her children. And the record demonstrated Mother only sporadically participated in the scheduled virtual and in-person visits with J.G.W.

Even Ms. Barbara, J.G.W.'s then-current foster parent, testified in favor of the motion because J.G.W. was in need of permanency which she was presumably unable to provide. By contrast, the proposed foster parents testified that they were willing to make J.G.W. a permanent part of their home.

2. The wishes of J.G.W. and his guardian ad litem.

J.G.W. asked the court to approve the placement because he wanted to live with the proposed D.C. foster parents, did not want to live with his Mother, and was willing to switch schools and make new friends. His guardian ad litem confirmed J.G.W.'s sentiments in this regard. *See Sanders v. Busch*, 123 S.W.3d 311, 314 (Mo. App. W.D. 2003) (The best interests of the child factors include the wishes of the child, which are relevant and "must be considered" when the child is old enough to form and express an intelligent preference.). *See also McBride v. McBride*, 579 S.W.2d 388, 390 (Mo. App. E.D. 1979).

6

3. The logistics of J.G.W.'s placement in Washington D.C.

Through the conditions imposed on J.G.W.'s placement in Washington D.C., the court sought to address the parties' interest in J.G.W.'s continuing contact with his Mother and siblings both virtually and in-person. The trial court was persuaded by the proposed foster parents' testimony that they were committed to fostering both virtual and in-person visitation among J.G.W., his Mother, and his siblings and that they would in fact bring J.G.W. to St. Louis for such visits. We defer to the trial court on such matters and we view the evidence in the light most favorable to the trial court's determination. *In re K.M.W.*, 342 S.W.3d at 359.

4. J.G.W.'s continuing relationship with Mother and his siblings in the context of his relationship with these potential adoptive parents.

The court extensively addressed this consideration. *Noland-Vance v. Vance*, 321 S.W.3d 398, 419 (Mo. App. S.D. 2010) (A child's interrelationship and interaction with his or her siblings are relevant factors to consider in custody decisions but those factors must be weighed and balanced in light of an overriding concern for the best interests of the child.). Inasmuch as J.G.W.'s permanency plan shifted in August 2021 to termination of parental rights and adoption, the emotional connection between J.G.W. and the proposed foster parents, which was readily apparent at the hearing, is significant to this issue. J.G.W. was originally placed with this family upon entering state custody in September 2018. After he left their home because a maternal aunt's home became available for placement, J.G.W has remained in contact with them.

And these foster parents also demonstrated through their testimony and past actions that they not only intend to welcome J.G.W. into their home but that they have committed to willingly comply with the court's directives in terms of keeping J.G.W. connected with his

7

biological family. Moreover, they became licensed foster parents in Washington D.C. for the purpose of accepting J.G.W. into their home.

     5.      <u>J.G.W.'s adjustment to the new community, school, and home.</u>

It is apparent that moving J.G.W. from his native St. Louis to Washington D.C. represents a wholesale change to his surroundings in terms of family, friends, and school. Nevertheless, we are persuaded that in reaching its placement decision, the trial court considered such a major set of changes against the backdrop of J.G.W.'s four years in foster care, during which he attended three different schools, lived in several homes, and endured a challenging relationship with his Mother.

Moreover, the record demonstrates that the trial court weighed the impact on J.G.W.'s education and sought to minimize the move's disruptive impact. Similarly, the above-cited intentions of the proposed foster parents to support J.G.W.'s continued contact with his biological family addressed the concern that J.G.W. not become isolated in this new city. We conclude that the court showed careful and deliberate consideration of this factor in the context of J.G.W.'s best interests. *In the Interest of S.Y.B.G.*, 443 S.W.3d at 59.

     6.      <u>The mental and physical health of all individuals involved.</u>

In addition to considering Mother's mental health issues and behavior outlined above, we are persuaded that the trial court considered the move's impact on J.G.W.'s mental health, happiness, and stability. While Ms. Barbara had by all accounts done a good job, J.G.W.'s placement with her was not permanent, and the court concluded that the level of stability and permanency offered by the proposed foster family served J.G.W.'s mental health and happiness more completely. We defer to such determinations. *In re K.K.J.*, 984 S.W.2d 548, 552 (Mo. App. S.D. 1999).

## Conclusion

We affirm because there was sufficient evidence to support the trial court's finding that modifying J.G.W.'s placement was in his best interests and Mother has failed to show that the trial court abused its discretion.

_____
James M. Dowd, Judge

Kelly C. Broniec, P.J., and
Philip M. Hess, J. concur.

9