

# In the Missouri Court of Appeals
# Eastern District

DIVISION THREE

IN THE INTEREST OF S.R.H.     )    No. ED107430

                               )

                               )    Appeal from the Circuit Court

                               )    of St. Francois County

                               )    18SF-JU0012

                               )

                               )    Honorable Sandra Martinez

                               )

.                                )    FILED:  September 24, 2019

## OR D E R

On the Court's own motion, the Per Curiam Order and Memorandum filed in this case on August 20, 2019 is hereby withdrawn and an Opinion is to issue.

SO ORDERED:

_____

Mary K. Hoff, Presiding Judge

CC:    Honorable Sandra Martinez
        Robert W. Bilbrey
        Tammy Machelle Steward
        Hardin Thomas Haynes
        Brice Sechrest

# In the Missouri Court of Appeals
# Eastern District

DIVISION THREE

IN THE INTEREST OF S.R.H.

)  No. ED107430
)
)  Appeal from the Circuit Court
)  of St. Francois County
)  18SF-JU0012
)
)  Honorable Sandra Martinez
)
)  FILED:  September 24, 2019

OPINION

E.D.H. ("Mother") appeals from the "Judgment and Decree Terminating Parental Rights" ("Judgment") that terminated her parental rights to S.R.H. ("Child") on the grounds of abuse and neglect, under Section 211.447.5(2) RSMo 2000[1]; failure to rectify conditions, under Section 211.447.5(3); and parental unfitness, under Section 211.447.5(6).  We affirm.

## Factual and Procedural Background

Child was born in Texas on April 11, 2009.  On May 9, 2015, Child was placed under the physical and legal custody of the Missouri Department of Social Services, Children's Division ("Children's Division").  Child remained in foster care continuously from May 2015 through January 2018.  On August 1, 2017, Child's father consented to termination of his parental rights, which the trial court approved and accepted on August 15, 2017.  Father did not appear at the termination hearing and does not challenge the termination of his parental rights.

---

[1] Unless otherwise indicated, all further statutory references are to RSMo 2000 as amended.

Mother has an extensive criminal history dating back to 1987, and an extensive child abuse/neglect history dating back to 2002, involving multiple children and states, including Missouri. Mother's parental rights have been terminated to five of her six children.

On October 16, 2018, Mother's parental rights to Child were terminated. She challenges the termination on the grounds there was not clear, cogent and convincing evidence to terminate her parental rights under Section 211.447, and because the Children's Division failed to make reasonable efforts to reunify parent and child.

We set forth a brief chronological history of the events which brought Child into the custody of the trial court as well as the long procedural history below.

On October 31, 2014, Child came under the jurisdiction of the juvenile division of the trial court when Mother was arrested and charged with assault of Child's grandmother in Case No. 14SF-JU00181. The trial court found that Mother had abused Child, and that Mother was medically abusing Child by giving her medications that she had not been prescribed. Finally, the trial court found that Child was a victim in Child abuse and neglect cases in California and Texas, and that there was an active Child protective services case open against Mother in Texas for medical neglect. On December 29, 2014, the trial court entered its order of adjudication in case 14SF-JU00181 placing Child in the temporary legal and physical custody of the Children's Division. On January 12, 2015, the court terminated jurisdiction over Child.

On May 29, 2015, following an allegation that Mother had physical custody of Child contrary to a court order of custody granting sole legal and physical custody to Child's father where Mother was afforded no visitation, the juvenile office filed its Petition for Protective Custody.

On May 30, 2015, a second juvenile case was opened, Case No. 15SF-JU00080.

2

On June 4, 2015, the court entered an order and finding of jurisdiction, and at the same time entered a "Social Service Plan" ("Plan") for Mother.

On July 27, 2015, the trial court once again took jurisdiction over Child, finding *inter alia*, that Mother had provided Child with non-prescribed medications, that Mother had a "very extensive Child Abuse/Neglect history involving the states of Arizona, Texas, Tennessee, California, and Missouri," and that Mother had her parental rights over other children terminated. The court took judicial notice of the files in both abuse and neglect cases.

On January 12, 2018, the juvenile office filed its petition for Termination of Parental Rights, seeking to terminate the parental rights of both Mother and Father to Child.

During the underlying case, it was also discovered that Mother was involved in a murder investigation in Illinois. Mother informed her case worker of this in December 2015. In June 2016, Mother was arrested and incarcerated in Madison County, Illinois awaiting trial on the charge of murder in the first degree. She remained incarcerated from June 2016 until the termination hearing.

On August 30, 2018, the trial court held a hearing regarding Mother's parental rights. On October 16, 2018, the court entered its Judgment terminating Mother's parental rights finding that Mother had abused or neglected the Child, under Section 211.447.5(2). The trial court also found grounds to terminate Mother's parental rights under Section 211.447.5(3) and Section 211.447.5(6). Finally, the trial court found that termination was in Child's best interests, pursuant to Section 211.447.6. This appeal follows. Additional facts will be included below as we address Mother's six points on appeal.

Standard of Review

Termination of parental rights is permitted when a statutory ground for termination is supported by clear, cogent, and convincing evidence, and termination is determined to be in the best interests of the child by a preponderance of the evidence. In re K.A.W., 133 S.W.3d 1, 12 (Mo. banc 2004). "[C]lear, cogent, and convincing evidence instantly tilts the scales in favor of termination when weighed against the evidence in opposition and the finder of fact is left with the abiding conviction that the evidence is true." K.A.W., 133 S.W.3d at 12. In our review, we "defer to the circuit court's ability to judge the credibility of witnesses and will affirm the judgment unless there is no substantial evidence to support it, it is contrary to the evidence, or it erroneously declares or applies the law." Id. at 11. Any conflicting evidence will be viewed in the light most favorable to the judgment of the circuit court. Id. at 12.

Discussion

Mother raises six points on appeal. For ease of discussion, we address related points together.

Abuse and Neglect

In Points I, II, and III, Mother argues that the trial court erred in terminating her parental rights pursuant to Section 211.447.5(2) because the decision was not supported by clear, cogent, and convincing evidence. In all three points, Mother challenges the findings made in subparagraphs (a) through (d) as insufficient in that the trial court relied on an "outdated evaluation" to determine Mother's conduct at the time of trial and, further, failed to correlate Mother's past acts and conduct to a potential for future harm or her ability to care for Child prospectively. We disagree.

4

Section 211.447.5 lists the grounds for termination that may prompt the filing of a petition for termination of parental rights. Subsection (2) states, in relevant part, that in determining whether to terminate parental rights because "[t]he Child has been abused or neglected," the trial court is required to consider and make findings on certain conditions or acts of the parent. Here, Child was adjudicated abused or neglected in 2015; Mother does not dispute that adjudication. In a case of abuse or neglect, Subsection (2) requires the trial court to consider and make findings regarding four factors:

> (a) A mental condition which is shown by competent evidence either to be permanent or such that there is no reasonable likelihood that the condition can be reversed and which renders the parent unable to knowingly provide the child the necessary care, custody and control;
> (b) Chemical dependency which prevents the parent from consistently providing the necessary care, custody and control of the child and which cannot be treated so as to enable the parent to consistently provide such care, custody and control;
> (c) A severe act or recurrent acts of physical, emotional or sexual abuse toward the child or any child in the family by the parent, including an act of incest, or by another under circumstances that indicate that the parent knew or should have known that such acts were being committed toward the child or any child in the family;
> (d) Repeated or continuous failure by the parent, although physically or financially able, to provide the child with adequate food, clothing, shelter, or education as defined by law, or other care and control necessary for the child's physical, mental, or emotional health and development.

Section 211.445.5(2)(a)-(d). These factors are not themselves separate grounds for termination, but "proof of one such factor is sufficient to support termination on the statutory abuse or neglect ground." Interest of J.L.D., 560 S.W.3d 906, 912 (Mo. App. E.D. 2018).

With regard to Section 211.447.5(2)(a), the trial court found that Mother's mental condition, her diagnosis of Factitious Disorder Imposed on Another (f/k/a Munchausen's Syndrome by proxy) ("factitious disorder") was permanent, or such that there is no reasonable likelihood that the condition could be reversed, and that it rendered Mother unable to knowingly provide the Child with necessary care, custody, and control.

In order to find that a mental condition justifies termination of parental rights, the court must analyze three aspects: "(1) documentation—whether the condition is supported by competent evidence; (2) duration—whether the condition is permanent or such that there is no reasonable likelihood that it can be reversed; and (3) severity of effect—whether the condition is so severe as to render the parent unable to knowingly provide the child necessary care, custody and control." K.A.W., 133 S.W.3d at 13. Moreover, before a parent's mental illness can support termination, it must be proven that the condition disables the parent from providing his or her children with adequate care:

[W]hen termination is based on a parent's mental illness, courts must take great care to identify a causal connection between the disability and harm to a child before terminating parental rights.

       *  *  *

A mere finding of even severe mental illness is insufficient to support termination. A termination of parental rights on grounds of mental illness requires substantial evidence that the incapacity is so severe that it renders the parent incapable of providing minimally acceptable care.

In re A.G.B., 530 S.W.3d 7, 31 (Mo. App. W.D. 2017) (quoting In re T.J.P., Jr., 432 S.W.3d 192, 202-203 (Mo. App. W.D. 2014), abrogated on other grounds by S.S.S. v. C.V.S., 529 S.W.3d 811, 823, fn. 3 (Mo. banc 2017)).

Here, Mother does not dispute her diagnosis of factitious disorder. Instead, Mother contends the trial court did not have sufficient evidence the condition was permanent or not reversible, or that it had any causal connection to Mother's ability to provide support to Child in the future. Mother's argument is without merit.

Mother's medical seeking behavior has been documented in the past and her parental rights were terminated in 2008 with respect to another child on that very ground.

6

In the instant case, Mother reported that Child had been diagnosed with Postural Orthostatic Tachycardia, Uticaria, Angiao Ademia, Immunodeficiency disorder, Mast Cell Disorder, and Autism. Mother reported Child was receiving medications from Mexico: Prozac, Colodine, and Respiridone. The trial court was presented with extensive evidence that, due to these reported conditions, Mother had subjected Child to unnecessary medical testing and treatment, but that when Child was examined independently, it was determined that Child had none of these conditions and did not require any of these medications.

While Mother contends she sought counseling for the factitious disorder, throughout the underlying case and at trial, Mother testified she was either unaware of her personality disorder diagnosis, did not know what factitious disorder was, or denied she had any mental condition at all. Moreover, a July 2016 court report indicated Mother was dismissed from therapy because she continued to argue with the counselor about her diagnosis and was confrontational about Child's lack of diagnoses. Consequently, the trial court found that Mother's condition remained unacknowledged and untreated. Given the record before us, the trial court's findings regarding Mother's mental conditions are supported by clear, cogent and convincing evidence to support termination on these grounds.

With regard to Section 211.445.5(2)(b), the trial court found no evidence that Mother had a chemical dependency which prevented her from consistently providing the necessary care, custody and control of Child and which cannot be treated so as to enable the parent to consistently provide such care, custody and control. Therefore, Subsection (b) is not at issue here.

With regard to Section 211.447.5(2)(c), the trial court found that Mother had committed severe or recurrent acts of abuse. Mother argues that these acts were all in the past, and that the

7

trial court made insufficient findings regarding the probability of future harm despite Mother having made progress on her service plan.

"An essential part of any determination whether to terminate parental rights is whether, considered at the time of the termination and looking to the future, the child would be harmed by a continued relationship with the parent." K.A.W., 133 S.W.3d 1, 9–10 (Mo. banc 2004). "Past behavior can support grounds for termination, but only if it is convincingly linked to predicted future behavior. There must be some explicit consideration of whether past acts provide an indication of the likelihood of future harm." K.A.W., 133 S.W.3d at 10. Isolated abusive acts or conditions may not support termination when considered individually, but if they form a consistent pattern, are recurrent or are repeated, they can, when considered in combination, rise to the level of abuse and support termination. Id. at 11.

A parent's efforts to comply with a social service plan will provide the court with an indication of the parent's likely efforts in the future to care for the Child. Id. at 10. Lack of effort to comply with a plan, or a lack of success despite effort, predicts future problems. Id.

Here, the trial court found Mother had lost custody to all of her other Children. In addition, the court found that Mother had exposed Child to severe and recurrent acts of physical and sexual abuse by Child's father, even after she knew or should have known of this abuse.

As discussed above, the trial court also made extensive findings regarding Mother's repeated medical abuse of Child. It was documented that Mother subjected Child to numerous unnecessary exams and treatments, even though Child repeatedly tested as normal and it was later determined that she had none of these conditions and did not require any medications. It was even observed that Mother transported Child in a wheelchair despite multiple medical providers not having observed a requirement for one.

8

Again, Mother argues she was making progress because she participated in individual therapy; however, she denied having any mental condition throughout the case and through the termination trial. Moreover, the record shows Mother was dismissed from therapy because she continued to dispute her diagnoses and the lack of diagnoses for Child. As a result, the court found Mother's mental condition was unacknowledged and untreated. "When a parent has committed severe and recurrent acts of abuse toward his child, logic and life experiences dictate the presumption that an unreformed parent will continue to be a threat to the welfare of the child for the foreseeable future." In re J.L.G., 399 S.W.3d 48, 60 (Mo. App. S.D. 2013) (quoting In re T.M.E., 169 S.W.3d 581, 588 (Mo. App. W.D. 2005)). Here, Mother was clearly unreformed with respect to her mental disorder, therefore under these circumstances, it was reasonable for the trial court to conclude the danger to Child still existed.

Finally, contrary to Mother's assertions, the trial court explicitly stated it was not considering just Mother's past conduct. The trial court noted that at the time of trial, Mother had been incarcerated on murder charges for the past year, and could continue to be incarcerated for the foreseeable future. Given the record before us, the trial court's findings that Mother continued to engage in severe and recurrent acts of abuse are supported by clear, cogent and convincing evidence to support termination on these grounds.

With regard to Section 211.447.5(2)(d), the trial court found Mother failed to provide any financial support, prior to or after incarceration, and therefore found grounds to terminate Mother's parental rights under Subsection (d). Mother argues that because she was incarcerated on the date of trial, she lacked any financial ability to support Child and, consequently, the trial court's findings on this factor are clearly erroneous. We disagree.

Mother may not rely upon her incarceration as a reason for failing to contribute any money toward Child's support because incarceration does not discharge her parental obligations. See In re M.J.H., 398 S.W.3d 550, 562 (Mo. App. S.D. 2013) (parent's incarceration does not relieve her obligation to make a minimal financial contribution for child's support). We acknowledge that an incarcerated parent's contribution "will not significantly assist in providing the parent's child with essentials," but instead, it shows the parent's intent to continue the parent-child relationship. M.J.H., 398 S.W.3d at 562 (quoting In re M.L.K., 804 S.W.2d 398, 402 (Mo. App. W.D. 1991)). Here, the record shows that while she had the ability to provide financial support for Child, even prior to incarceration, Mother failed to do so.

Moreover, Mother's failure to provide for Child continued once incarcerated, and her contact with Child, through letters, in the months leading up to trial became significantly reduced and were a continuation of the prior apathy she demonstrated. The trial court's findings are supported by the record. Points I, II, and III are denied.

Failure to Rectify

In Point IV, Mother argues the trial court erred in finding grounds to terminate Mother's parental rights under Section 211.447.5(3). We disagree.

Section 211.447.5(3) allows the court to terminate parental rights to a child when:

> The child has been under the jurisdiction of the juvenile court for a period of one year, and the court finds that the conditions which led to the assumption of jurisdiction still persist, or conditions of a potentially harmful nature continue to exist, that there is little likelihood that those conditions will be remedied at an early date so that the child can be returned to the parent in the near future, or the continuation of the parent-child relationship greatly diminishes the child's prospects for early integration into a stable and permanent home.

Section 211.447.5(3). In determining whether to terminate parental rights under this subdivision, the court is required to consider and make findings on the following factors: 1) compliance with

terms of a social service program entered into with the Children's Division, 2) the success or failure of the efforts of the Juvenile Officer, Children's Division, or other agency to aid the parent on a continuing basis in adjusting his or her circumstances or conduct to provide a proper home for the child, 3) a mental condition rendering the parent unable to knowingly provide the child the necessary care, custody and control, and 4) a chemical dependency which prevents the parent from consistently providing the necessary care, custody and control over the child and which cannot be treated so as to enable the parent to consistently provide such care, custody and control. Section 211.447.5(3)(a)-(d). These factors "are not separate grounds for termination by themselves, but rather categories of evidence, that the court may consider along with all other relevant evidence in determining whether grounds for termination exist under Section 211.447.5 (3)." In re S.Y.B.G., 443 S.W.3d 56, 60 (Mo. App. E.D. 2014). Although the court should consider and make findings on all factors, proof of just one factor is sufficient to support termination of parental rights. S.Y.B.G., 443 S.W.3d at 60.

Mother primarily challenges the trial court's findings made under Section 211.447.5(3)(a), relating to her compliance with her Plan. Mother argues that the record shows she made substantial compliance towards the Plan prior to her incarceration, and that after her incarceration, her lack of compliance should be excused because of her incarceration.

Social service plans provide highly relevant evidence because the extent to which a parent has or has not made an effort to accomplish the plan's goals can help predict the effort a parent will put forth in the future to care for the child or predict other future problems. In re S.M.H., 160 S.W.3d 355, 368 (Mo. banc 2005). The issue in termination of parental rights cases is whether progress has been made toward the plan goals, not whether there has been full or even substantial compliance. S.M.H., 160 S.W.3d. at 369. Failure to comply with parts of the service

11

plan is not grounds for automatic termination, nor does partial compliance with a service plan prevent termination. In the Interest of K.M.A.-B, 493 S.W.3d 457, 474 (Mo. App. E.D. 2016). A failure to achieve progress supports termination of parental rights but only when a when the harmful condition underlying termination is left uncorrected. K.M.A.-B, 493 S.W.3d at 474.

Here, the question before this Court is not whether Mother complied, or did not comply, with any particular part of the Plan, but rather whether the lack of compliance in any regard demonstrates that a dangerous condition has been left uncorrected and will not be remedied in the near future. Id. The trial court acknowledged that Mother had complied with some parts of the Plan, including participation in a psychological evaluation, completion of a domestic violence course, and compliance with drug testing and a substance abuse evaluation. However, the trial court cited concerns over Mother's unacknowledged and untreated mental condition. Additionally, even after completing the domestic violence course, Mother continued to be in dangerous relationships, a fact the trial court considered in determining that Child would be exposed to a dangerous environment if returned to Mother in the future. The trial court also cited concerns over Mother's ongoing incarceration that prevented Mother from providing stable housing, and the related issue of lack financial support for Child. All of the above, demonstrated conditions that remained uncorrected and would not be corrected in the near future.

As such, the trial court's findings were supported by the record and support termination of parental rights under Section 211.447.5(3), as the record clearly showed that Mother's lack of compliance with parts of the Plan resulted in a dangerous condition that remained uncorrected, and would not be corrected in the near future. Point IV is denied.

<u>Parental Unfitness</u>

In Point V, Mother argues the trial court erred in finding grounds to terminate her parental rights under Section 211.447.5(6). We disagree.

Section 211.447.5 states in pertinent part that:

> The juvenile officer or the division may file a petition to terminate the parental rights of the child's parents when it appears that one or more of the following grounds for termination exist:
>
>     \*        \*        \*
>
> (6)(a) The parent is unfit to be a party to the parent and child relationship because of a consistent pattern of committing a specific abuse including, but not limited to, specific conditions directly relating to the parent and child relationship which are determined by the court to be of a duration or nature that renders the parent unable for the reasonably foreseeable future to care appropriately for the ongoing physical, mental, or emotional needs of the child.

Section 211.447.5(6)(a). A "consistent pattern of committing a specific abuse" includes "specific conditions directly relating to the parent and child relationship which are determined by the court to be of a duration or nature that renders the parent unable for the reasonably foreseeable future to care appropriately for the ongoing physical, mental, or emotional needs of the child." In Interest of J.P.B., 509 S.W.3d 84, 94–95 (Mo. banc 2017).

Although this Court may affirm on only one ground, here, the trial court relied on three specific factors to support the finding of termination of Mother's parental rights pursuant to section 211.447.5(6)(a): Mother's failure to address her mental health condition, Mother's history of being unfit to parent her children, and Mother's failure to visit with and to establish a bond with Child.

Specifically, with respect to Mother's parental unfitness, Mother challenges the trial court's finding that she had "a long history of being unfit to parent her children." The trial court's finding on this factor is supported by the record. Mother has had her parental rights terminated to five of her six children, with the exception of Child. Mother had a history of fleeing a state

13

whenever that state's child protective services contacted her, and had inconsistent involvement with the Children's Division in Missouri since her arrest in 2016. In addition, as discussed extensively above, Mother's mental condition, and the resulting acts of abuse she had committed, remained unacknowledged and untreated at the time of trial. For all these reasons, it was reasonable for the trial court to conclude that Mother's extensive history of parental unfitness and dangerous conditions for Child existed and would continue to exist in the future. Point V is denied.

## Reasonable Efforts to Reunify

In Point VI, Mother argues the trial court erred in terminating her parental rights because the Children's Division did not provide her with "reasonable efforts to reunify." Mother contends that as a result of this failure to make reasonable efforts to reunite Mother with Child, the Judgment should be set aside. We disagree.

To terminate parental rights under Section 211.447, the trial court is first required to find by "clear, cogent, and convincing evidence" that one or more grounds for termination exists. J.L.D., 560 S.W.3d at 912. As the State correctly point out, however, Mother cites no case that holds the trial court is required to make any "overarching" finding that the Children's Division made reasonable efforts at reunification, or that a termination of parental rights should be reversed, regardless of findings the trial court made under Section 211.447 to support termination.

Mother relies on In re E.A.C., 253 S.W.3d 594 (Mo. App. S.D. 2008), which is inapposite. The case states that Section 211.447.5 provides the trial court may terminate a parent's rights, "when it appears by clear, cogent and convincing evidence that grounds exist"; however, it does not create an additional requirement that the trial court review the adequacy of the Children's

14

Division's efforts outside of the statute, and in fact states that termination of parental rights is appropriate when the court finds adequate evidence one of the statutory requirements has been met. E.A.C., 253 S.W.3d at 600-601. Therefore, the trial court is required only to review the Children's Division's efforts in connection with the findings required by Section 211.447.5, which were addressed above, and not in addition to those expressly stated in the statute. As those findings were made by the trial court, Mother's point is without merit. Point VI is denied.

### Conclusion

The Judgment is affirmed.

_____
Honorable Mary K. Hoff

Sherri B. Sullivan, Judge and Angela T. Quigless, Judge: Concur

15